# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRYL W. ALLEN, )<br>)<br>    *Plaintiff*, )<br>)<br>  vs. )<br>)<br>MICHAEL J. ASTRUE, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>    *Defendant*. ) | CAUSE NO. 1:10-cv-1449-WTL-MJD |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Darryl W. Allen requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Allen's application for Supplemental Security Income ("SSI"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Allen filed his application on March 8, 2007, alleging disability as of December 1, 2006. His application was denied initially and upon reconsideration, after which he requested and was granted a hearing before an Administrative Law Judge ("ALJ"). Allen was represented by counsel at the hearing, which was held on March 29, 2010. Allen and a vocational expert testified at the hearing. Thereafter, on April 30, 2010, the ALJ rendered her decision in which she concluded that Allen was not disabled under the terms of the Social Security Act ("the Act"). The Appeals Council denied Allen's request for review of the ALJ's decision on September 23, 2010. Allen then filed this action for judicial review.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by

reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. *Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011); 20 C.F.R. § 416.920.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee*, 649 F.3d at 569.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that

2

of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to herconclusion." *Id.*

### III. **MEDICAL EVIDENCE**

On December 27, 2006, Allen went to the emergency room complaining of abdominal pain. A CT scan revealed a thickening of his sigmoid colon, consistent with diverticulitis, and a pelvic abscess. Allen was admitted to the hospital and the pelvic abscess was drained. When Allen did not respond to treatment over the next few days, on January 4, 2007, he underwent surgery to remove his sigmoid colon and insert an ostomy bag. When tests revealed the presence of cancerous cells, Allen was diagnosed with Stage III moderately differentiated invasive adenocarcinoma. Allen remained hospitalized until January 13, 2007.

On January 12, 2007, Allen met with Dr. Frank Workman, an oncologist. Dr. Workman noted that Allen weighed only 134 pounds, significantly less than his normal range of 180 to 220 pounds, and that he had marked muscle wasting in his arms and legs. Dr. Workman recommended that Allen undergo a course of chemotherapy.

On February 9, 2007, Allen was seen by Dr. Goulet to discuss his options for treating his

3

colon cancer. Dr. Goulet discussed chemotherapy options with Allen and scheduled him for another visit the following week.

On April 12, 2007, Allen met with his surgeon, Dr. Lloyd, and expressed his desire for a colostomy takedown, that is, surgery to reverse his colostomy. Dr. Lloyd advised Allen that having the procedure would result in a delay of his chemotherapy treatment. Allen told Dr. Lloyd that he understood the risks, had discussed the issue with his family, and had made up his mind. Dr. Lloyd scheduled him for several tests, including a colonoscopy.

On May 15, 2007, Allen met with Dr. Emily Susott in advance of a colonoscopy that was scheduled for June 8, 2007, to evaluate for synchronous colon cancer. Allen asked Dr. Susott about having his colostomy reversed and was told to speak with his oncologist and his surgeon.

On August 23, 2007, Allen met with Dr. Jason Cadwallader at a GI clinic. At that time, Allen complained of abdominal pain that had started approximately one month earlier and seemed to occur in conjunction with bowel movements. Allen also complained of shortness of breath and a cough. Dr. Cadwallader found Allen's symptoms "worrisome for metastasis" and ordered an abdominal and chest CT and other lab tests. No metastasis were found. Dr. Cadwallader prescribed Vicodin for pain and told Allen to follow up with his primary care physician for further pain management.

Allen visited the emergency room in October 2007 for pain in his left scapula resulting from a car accident he was in a few days prior. Allen was diagnosed with back strain and prescribed ibuprofen and Vicodin.

On March 20, 2008, Allen was seen at the GI clinic by Dr. Eppstein. He complained of pain in his buttocks radiating to his back, shortness of breath, and a persistent cough. Dr. Eppstein ordered tests and a return visit to "discuss takedown of colostomy."

On April 4, 2008, CT scans of Allen's chest, abdomen and pelvis were conducted. The chest CT scan revealed "scattered mild changes of paraseptal emphysema within the lungs." The abdomen and pelvis CT revealed "no focal abnormality involving the gallbladder, spleen, either adrenal gland, either kidney, or the pancreas." On the same day he was seen in the emergency room to obtain a refill of his pain and cough medications.

Allen was hospitalized from May 14, 2008, to May 25, 2008, for a reversal of his colostomy. The surgery was successful; however, due to a stapler misfire, Allen was given a protective loop ileostomy. On June 30, 2008, Allen was admitted to have a second surgery to take down the loop ileostomy. Allen was discharged on July 3, 2008.

On July 24, 2008, Allen went to the GI clinic for a follow-up appointment. The doctor noted that Allen was "doing well" and did not need to return to the clinic. The doctor also noted that Allen should be evaluated for chemotherapy.

On July 27, 2008, Allen again experienced abdominal pain. X-rays revealed a possible early small bowel obstruction.

On January 16, 2009, Allen was taken to Wishard Hospital by ambulance complaining of abdominal pain. Allen was admitted to the hospital and the following day a CT scan showed a small bowel obstruction and a small hernia. Allen remained hospitalized until January 21, 2009, at which time the bowel obstruction had been resolved.

On February 7, 2010, Dr. Segun Rasaki completed a Physical RFC Questionnaire regarding Allen. Dr. Rasaki reported that he saw Allen on a monthly basis and diagnosed him with COPD and chronic back pain. He opined that Allen could sit for thirty minutes and stand for forty-five minutes at a time and that he could sit for less than two hours and stand/walk up to

5

two hours in an eight hour work day.  Dr. Rasaki also opined that Allen would need to get up and walk around every thirty minutes for approximately ten minutes at a time.  Dr. Rasaki indicated that Allen could frequently lift or carry less than ten pounds, occasionally lift or carry ten pounds, rarely lift or carry twenty pounds, and never lift or carry fifty pounds.  He would likely be absent from work about three days per month as a result of his condition.  Dr. Rasaki also noted that Allen should never climb ladders and should avoid extreme temperatures, dust, fumes and hazardous gases.

On February 23, 2010, Allen had another CT scan of his abdomen and pelvis.  It revealed nonobstructing small bowel adhesive disease with no evidence of intra-abdominal or pelvic abscess.  A "tiny fat containing left inguinal hernia" also was noted.

On March 22, 2010, Allen returned to the emergency room complaining of nausea and vomiting.  Allen was admitted to the hospital after a CT scan revealed dilation of the small bowel proximal to the takedown site of his ileostomy.  He was treated medically for a partial small bowel obstruction and discharged on March 28, 2010, "in good condition on a regular diet, on his home medications as well as Vicodin for pain."

## IV.  **THE ALJ'S DECISION**

The ALJ found at step one that Allen had not engaged in substantial employment since his application date of March 8, 2007.  At steps two and three, the ALJ concluded that Allen had the severe impairments of history of colon cancer, recurrent small bowel obstruction and pancreatitis, and chronic obstructive pulmonary disease, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment.  The ALJ then concluded that Allen retained the RFC to perform a range of light work that required only occasionally climbing

6

ramps, stairs, ladders, ropes and scaffolding and occasionally stooping, kneeling, crouching, and crawling, and permitted Allen to avoid wet, slippery surfaces and working with the general public.

The ALJ determined at step four that, given his residual functional capacity, Allen was not capable of performing his past relevant work  Finally, at step five, the ALJ found that given Allen's RFC, age, education, and experience, he was capable of performing a significant number of jobs in the national economy and therefore was not disabled.

## V. **DISCUSSION**

Allen takes issue with the ALJ's RFC determination, and the Court agrees that it is not supported by substantial evidence.  The evidence in the record regarding Allen's RFC is the form completed by his treating physician, Dr. Rasaki, and Allen's own testimony regarding the pain he experiences.  If Dr. Rasaki's RFC were credited, a finding of disability would be required. However, with regard to Dr. Rasaki's opinion the ALJ found:

> This opinion was reviewed by the undersigned but assigned little weight because it is not supported by the medical evidence of record. The extensive limitations contained in this opinion are not supported by any indicated restrictions or limitations placed upon the claimant while he was being treated.  Furthermore, since this form was completed at the request of the claimant's attorney, it is possible that this physician indicated these extreme limitations in the belief that he was assisting the claimant in his appeal for disability.

Record at 22.  However,"the fact that relevant evidence has been solicited by the claimant or [his] representative is not a sufficient justification to belittle or ignore that evidence."  *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (citations omitted).

> Quite the contrary, in fact. The claimant bears the burden of submitting medical evidence establishing [his] impairments and [his] residual functional capacity.  20 C.F.R. §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3).  How else can [he] carry this burden other than by asking [his] doctor to weigh in? Yet rather than forcing the ALJ to wade through a morass of medical records, why not ask the doctor to lay out in plain language exactly what it is that the claimant's condition

7

>     prevents [him] from doing?

*Id.* Therefore, the fact that Dr. Rasaki provided his opinion at the request of Allen's attorney was not an appropriate reason for the ALJ to disregard that opinion. Neither is the fact that Allen's other doctors had not included similar restrictions in their records necessarily indicative of what Allen is able to do given the amount of pain he is experiences.

It is true, however, that Dr. Rasaki's RFC opinion does not find much support in the medical evidence of record. Dr. Rasaki does not make it clear what condition Allen has that is causing the restrictions he finds. However, neither is there any support for the ALJ's RFC determination, which, frankly, she seems to have pulled out of thin air. In that sense, this case is analogous to *Scott v. Astrue*, 647 F.3d 734 (7th Cir. 2011), in which the ALJ did not identify any medical evidence to support her RFC finding. Because the ALJ failed to explain how she reached her conclusions about the claimant's physical capabilities, the court concluded that "the ALJ failed to build the requisite "logical bridge" between the evidence and her conclusion." *Id.* at 740 (citing *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir.2009)). Indeed, it appears that the claimant in *Scott* had even less medical evidence regarding her RFC than Allen does, as the court noted:

>     The Commissioner asserts that, apart from one statement at the hearing that Scott
>     was unable to lift more than one gallon of milk, there is no evidence that she has
>     any limitation on her lifting ability, and the ALJ was therefore entitled to
>     determine her RFC without reference to a more-substantial lifting restriction. It is
>     true that Scott bears the burden of producing evidence of her impairments, but she
>     did produce evidence in the form of her own testimony as well as medical
>     evidence that tremors make it difficult for her to use her hands. If the ALJ found
>     this evidence insufficient, it was her responsibility to recognize the need for
>     additional medical evaluations.

*Id.* at 740-41.

Because the ALJ chose to ignore Dr. Rasaki's opinion regarding Allen's RFC based upon improper considerations and substitute her own RFC determination without any medical evidence to support it, this case must be remanded. On remand, the ALJ should expressly consider the effect of Allen's COPD on his RFC. The ALJ also should consider whether Allen's lengthy hospitalizations in 2009 and 2010 rendered him disabled for some period of time and whether his condition is likely to require additional hospitalizations that may affect his ability to work. Finally, if the ALJ is not satisfied with the medical basis for Dr. Rasaki's RFC opinion, she should elicit additional medical evaluations to obtain the necessary information.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 03/06/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

9